

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MINGLI LI, Individually and on Behalf of All Others Similarly Situated, | ) Civil Action No. **10 CIV 7233** |
|  | ) |
|  | ) CLASS ACTION |
| Plaintiff, | ) |
|  | ) |
| v. | ) COMPLAINT FOR VIOLATIONS OF THE |
|  | ) FEDERAL SECURITIES LAWS |
| DUOYUAN GLOBAL WATER, INC., WENHUA GUO, and STEPHEN C. PARK, | ) |
|  | ) |
| Defendants. | ) |
|  | ) JURY TRIAL DEMAND |

Plaintiff Mingli Li, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, Plaintiff's counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Defendant Duoyuan Global Water, Inc. ("Duoyuan Global Water" or "DGW" or the "Company") and non-party Duoyuan Printing, Inc. ("Duoyuan Printing" or "DYP"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Defendant Duoyuan Global Water and DYP; and (c) review of other publicly available information concerning Defendant Duoyuan Global Water and DYP.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of purchasers of Duoyuan Global Water's securities between November 9, 2009 and September 13, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Defendant Duoyuan Global Water purports to be a China-based domestic water treatment equipment supplier.   The Company claims to develop advanced water treatment technologies and products and to provide products and water treatment solutions for municipal, industrial, residential and agricultural water treatment.  On June 24, 2009, the Company commenced its initial public offering of more than 5,500,000 American Depositary Shares (or "ADSs"), priced at $16.00 per share, and the ADSs commenced trading on the New York Stock Exchange ("NYSE") under the symbol "DGW."  Thereafter, during the Class Period, on January 28, 2010, pursuant to a Registration Statement and Prospectus (collectively, the "SPO Registration Statement") filed with the SEC that day, the Company commenced a follow-on secondary public offering (the "SPO"), of 3,545,000 ADSs at $29.50 per share.

3.     Duoyuan Global Water, primarily through Defendant Wenhua Guo ("Guo") – the Company's Chief Executive Officer ("CEO"), Chairman of the Board of Directors, and controlling shareholder – maintains a substantial interconnection with non-party DYP. DYP is another Chinese-based publicly traded company on the NYSE, which purports to manufacture commercial offset printing presses in China, and is expressly identified by Duoyuan Global Water as an "affiliated company."  For example, among others: (1) Defendant Guo also served as Chairman of the Board of DYP during the Class Period ; (2) Defendant Guo is the beneficial owner of 100% of the equity interest in Duoyuan Global Water's majority shareholder, Duoyuan Investments Limited, which

- 2 -

owns a controlling interest in DYP; and (3) Duoyuan Global Water and DYP share the same headquarters at No. 3 Jinyuan Road, Daxing Industrial Development Zone, Beijing 102600, People's Republic of China.

4.     On September 13, 2010, DYP announced a series of alarming management changes, including the resignation of at least four members of its Board of Directors, its CEO and Chief Financial Officer ("CFO"), and the dismissal of its independent registered public accounting firm Deloitte Touche Tohmatsu CPA Ltd. ("Deloitte"). Although this news specifically concerned events at DYP, it raised obvious red flags relating to both companies and had obvious implications for Duoyuan Global Water.

5.     On this news, shares of Duoyuan Global Water declined $8.60 per share, or 41.55%, to close on September 13, 2010, at $12.10 per share, on unusually heavy volume.

6.     The concerns raised by DYP's September 13, 2010, announcement were grave. For example, as a result, analysts from Janney Capital Markets immediately suspended coverage of Duoyuan Global Water. Just as telling, Piper Jaffray & Co. decreased its price target for Duoyuan Global Water from $34.00 per share down to $9.00 per share, an astounding 73.53%, effectively based on the significant ties that bind Duoyuan Global Water with DYP.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose, among others: (1) that, due to the substantial interconnection between Duoyuan Global Water and DYP, the existence of accounting improprieties and ineffective internal controls at DYP could negatively impact Duoyuan Global Water; and (2) that, as a result, the Defendants lacked a

- 3 -

reasonable basis for their statements about Duoyuan Global Water, its business, operations, prospects, and growth.

8.      As a result of Defendants' wrongful acts and omissions alleged herein, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and/or dissemination of materially false and/or misleading information, occurred in substantial part in this District.

12.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Mingli Li, as set forth in the accompanying certification, incorporated by reference herein, purchased Duoyuan Global Water securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Duoyuan Global Water is incorporated under the laws of the British Virgin Island and maintains its principal executive offices at No. 3 Jinyuan Road, Daxing Industrial Development Zone, Beijing 102600, People's Republic of China.

15. Defendant Guo was, at all relevant times, Chairman of the Board of Directors and CEO of Duoyuan Global Water. Additionally, Guo was, at all relevant times, Chairman of the Board of Directors of DYP.

16. Defendant Stephen C. Park ("Park") was, at all relevant times, CFO and Director of Duoyuan Global Water.

17. Defendants Guo and Park are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions within the Company, possessed the power and authority to control the contents of Duoyuan Global Water's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being

- 5 -

concealed from the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons or entities who purchased Duoyuan Global Water's securities between November 9, 2009 and September 13, 2010, inclusive (the "Class"), seeking to pursue remedies under the Securities Exchange Act of 1934. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Duoyuan Global Water's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Duoyuan Global Water ADRs were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Duoyuan Global Water or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

- 6 -

20.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

21.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Duoyuan Global Water; and

(c)    To what extent the members of the Class have sustained damages and the proper measure of damages.

23.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

- 7 -

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Defendant Duoyuan Global Water purports to be a China-based domestic water treatment equipment supplier.   The Company claims to develop advanced water treatment technologies and products and to provide products and water treatment solutions for municipal, industrial, residential and agricultural water treatment.

25.     Duoyuan Global Water, primarily through Defendant Guo – the Company's CEO, Chairman of the Board of Directors, and controlling shareholder – maintains a substantial interconnection with non-party DYP.  DYP is another Chinese-based publicly traded company on the NYSE, which purports to manufacture commercial offset printing presses in China, and is expressly identified by Duoyuan Global Water as an "affiliated company." For example, among others: (1) Defendant Guo also served as Chairman of the Board of DYP during the Class Period ; (2) Defendant Guo is the beneficial owner of 100% of the equity interest in Duoyuan Global Water's majority shareholder, Duoyuan Investments Limited, which owns a controlling interest in DYP; and (3) Duoyuan Global Water and DYP share the same headquarters at No. 3 Jinyuan Road, Daxing Industrial Development Zone, Beijing 102600, People's Republic of China.

### Materially False and Misleading
### Statements Issued During the Class Period

26.     The Class Period begins on November 9, 2009. On November 9, 2009, the Company issued a press release entitled, "Duoyuan Global Water Inc. Reports Third Quarter 2009 Financial Results." Therein, the Company, in relevant part, stated:

> Mr. Wenhua Guo, the Company's Chairman and Chief Executive Officer, stated, "We are pleased with the Company's third quarter financial results, which reflect increased

demand across all three product lines, our comprehensive and high quality product offering, as well as our low cost manufacturing base, extensive distribution network and strong competitive position. All of these factors contributed to our quarterly financial results today and lay the groundwork for continued growth in the future."

\*  \*  \*

Financial Outlook

Mr. Stephen C. Park concluded, "As we come off a fantastic third quarter, which is seasonally our strongest quarter, our competitive position remains strong and we are poised for future growth supported by our trusted brand name and vast distribution network. With this in mind, we are targeting revenue of approximately RMB190 million in the fourth quarter of 2009."

27. On January 11, 2010, in connection with the SPO, the Company filed with the SEC

a Registration Statement and Preliminary Prospectus on Form F-1, which was signed by Defendants

Guo and Park. Therein, the Company detailed the relationship between Defendant Guo, Defendant

Duoyuan Global Water, and DYP. For example, the Company, in relevant part, stated:

**Concurrent positions held by Wenhua Guo, our chairman and chief executive officer, with other businesses could impede his ability to devote sufficient time to our business and could pose conflicts of interest.**

Wenhua Guo serves as chairman of Duoyuan Printing, Inc., a public company. He is also the beneficial owner of 100% of the equity interest in our majority shareholder, Duoyuan Investments Limited, which owns a controlling interest in Duoyuan Printing, Inc. Through its subsidiaries in China, Duoyuan Printing, Inc. is principally engaged in the manufacture and sale of offset printing equipment to the Chinese market. Mr. Guo devotes most of his business time to our affairs and the remainder of his business time to the affairs of these printing equipment-related companies. Mr. Guo's decision-making responsibilities for these printing equipment-related companies are in the areas of public relations, management of human resources, risk management and strategic planning. As a result, conflicts of interest may arise from time to time. Additionally, even though Mr. Guo is accountable to us and our shareholders as a fiduciary, which requires that he exercise good faith and due care in handling our affairs, his existing responsibilities to other entities may limit the amount of time he can spend on our affairs.

\*  \*  \*

**Other Income**

Other income is primarily comprised of interest income earned on our cash deposits and rental income which we received in 2006, 2007 and the first half of 2008 from the lease of our office space located at No. 3 Jinyuan Road to Duoyuan Digital Printing Technology Industries (China) Co. Ltd., an entity controlled by our chairman and chief executive officer, Wenhua Guo. For further details, see "Related Party Transactions — Real Property Related Transactions."

\*　　\*　　\*

**Other Income**

Other income increased RMB2.0 million, or 80.4%, from RMB2.5 million in 2006 to RMB4.5 million in 2007. This increase was primarily the result of a non-recurring rental charge Duoyuan Digital Printing Technology Industries (China) Co. Ltd., an entity controlled by Wenhua Guo, our chairman and chief executive officer, for the office space located at No. 3 Jinyuan Road. Interest income remained relatively unchanged from 2006 to 2007.

\*　　\*　　\*

**Our Directors**

*Wenhua Guo.* Mr. Guo is the founder of our company and has served as our chairman and chief executive officer since the commencement of our operations in 1992. Before Mr. Guo founded our company, he was a physics teacher at Beijing Chemical Institute. Mr. Guo served as chief executive officer of Duoyuan Printing, Inc., a public company, from October 2006 to June 2009 and currently serves as chairman of the board of directors of Duoyuan Printing, Inc. Mr. Guo obtained a bachelor's degree in physics from Beijing Normal University in 1983.

\*　　\*　　\*

**Real Property Related Transactions**

Prior to the sale transaction described below, our subsidiary, Duoyuan Beijing, owned an office building located at No. 3 Jinyuan Road, Daxing Industrial Development Area, Beijing, China, with 15,400 square meters of building area and related land-use-rights with respect to approximately 7,230 square meters of land area.

Duoyuan Beijing had leased since December 25, 2002 approximately 3,000 square meters of office space located at No. 3 Jinyuan Road to Duoyuan Digital Printing Technology Industries (China) Co. Ltd., or Press China, an entity controlled by

- 10 -

Wenhua Guo, our chairman and chief executive officer. The annual lease payments totaled RMB1.1 million in 2006, 2007 and 2008, respectively. This lease agreement was renewed on December 25, 2007 for a term of one year ending on December 31, 2008. On June 27, 2008, Duoyuan Beijing and Press China agreed to amend this lease agreement to reflect a new termination date of June 30, 2008.

\*       \*       \*

With respect to the loans made by Duoyuan Beijing to Beijing Huiyuan, the largest amount outstanding under these loans was approximately RMB32.4 million during 2005, 2006 and 2007. As of December 31, 2007, the amount outstanding under these loans was approximately RMB27.4 million. Pursuant to a repayment agreement dated December 10, 2007 between Duoyuan Beijing, Beijing Huiyuan and Wenhua Guo, Mr. Guo assumed personal responsibility for repayment in full of Beijing Huiyuan's outstanding balance payable to Duoyuan Beijing. Mr. Guo's obligation to pay the outstanding balance was secured by a pledge of his shares of Duoyuan Printing, Inc., a public company. Similarly, on December 12, 2007, Mr. Guo entered into a loan repayment agreement with Duoyuan Huanan and Duoyuan Beijing to repay Duoyuan Huanan's obligation to Duoyuan Beijing that at the time was RMB17.0 million. This obligation was also collateralized by a pledge of Mr. Guo's personal shares in Duoyuan Printing, Inc. In December 2007, RMB0.6 million in interest was paid towards this obligation. These obligations were settled by March 31, 2008. We do not intend to make any similar loans to Mr. Guo in the future. See Note 8 to our Notes to Combined and Consolidated Financial Statements December 31, 2006, 2007 and 2008 included elsewhere in this prospectus.

(Emphasis in original).

28.     On January 19, 2010 and January 20, 2010, the Company filed with the SEC amendments on Forms F-1/A to the Registration Statement and Preliminary Prospectus that had been filed with the SEC on January 11, 2010. Therein, the Company, in relevant part, substantially repeated the statements contained in ¶27, *supra*.

29.     On January 28, 2010, the Company filed the SPO Registration Statement with the SEC, which was signed by Defendants Guo and Park. Therein, the Company, in relevant part, substantially repeated the statements contained in ¶27, *supra*.

30.     On March 8, 2010, the Company issued a press release entitled, "Duoyuan Global

Water Inc. Reports Fourth Quarter and Full Year 2009 Financial Results." Therein, the Company,

in relevant part, stated:

> Mr. Wenhua Guo, the Company's Chairman and Chief Executive Officer, stated, "We are pleased with the Company's fourth quarter and full year financial results, which reflect increased demand across all three product lines, driven by our comprehensive and high quality product offering, our low cost manufacturing base, extensive distribution network and our focus on continually developing new products. We plan to launch 36 products throughout the remainder of this year. We are confident that our competitive strengths and formidable cash position enable us to capitalize on the compelling market opportunities at hand."

> Fourth Quarter 2009 Financial Highlights

> * Revenue increased 29.6% to RMB193.8 million ($28.4 million(1)) from RMB149.5 million in the prior year period.
> * Gross margin increased to 47.3% from 44.1% in the prior year period.
> * Operating income increased 114.5% to RMB55.0 million ($8.1 million) from RMB25.6 million in the prior year period.
> * Net income increased 157.5% to RMB39.8 million ($5.8 million) from RMB15.5 million in the comparable period of 2008.
> * Diluted earnings per ADS(2) was $0.27. Each ADS represents two of the Company's ordinary shares.

> *       *       *

> Mr. Stephen C. Park, the Chief Financial Officer of Duoyuan, stated, "We are excited to move forward into 2010 in a highly flexible financial position. As demand continues to increase for water treatment equipment driven by stringent government regulations and the ongoing need for advanced water treatment equipment for commercial, industrial and residential uses, we believe we are well-positioned to capture the growing market opportunities."

> "We intend to use the proceeds to continue to expand our manufacturing facilities, to increase in-house production of key components used in existing or new product offerings, and to launch new products. The final phase of our Langfang expansion project is expected to be completed and fully operational by the end of the second quarter of 2010. We will also break ground in March this year on a new facility in Daxing, Beijing, where our headquarters are located, to address the growing demand for our products in 2011 and beyond."

"Additionally, we remain focused on enhancing our R&D capabilities, evidenced by our plan to build a new R&D center in the third quarter of this year. We look forward to executing our near-term growth strategies with a considerably strong cash position."

Financial Outlook

Mr. Stephen C. Park concluded, "As we move forward into 2010, our competitive position remains strong and we are poised for future growth supported by our trusted brand name and vast distribution network. With this in mind, we expect to generate revenue of approximately RMB157 million in the first quarter of 2010."

31.     On May 12, 2010, the Company issued a press release entitled, "Duoyuan Global

Water Inc. Reports First Quarter 2010 Financial Results." Therein, the Company, in relevant part,

stated:

First Quarter 2010 Financial Highlights

-- Revenue increased 33.0% to RMB160.5 million ($23.5 million)(1) from RMB120.6 million in the prior year period.
-- Gross profit increased 37.4% to RMB 74.9 million ($11.0 million) from RMB54.5 million in the prior year period.
-- Gross margin increased to 46.6% from 45.1% in the prior year period.
-- Diluted earnings per ADS was $0.17. Each ADS represents two of the company's ordinary shares.

Mr. Wenhua Guo, the Company's Chairman and Chief Executive Officer, stated, "Our first quarter results continue to demonstrate our sustained growth and presence in China's water treatment industry, with revenue growing 33% year over year. These encouraging results attest to the increasing recognition of the Duoyuan brand and our reputation as a high quality and top value manufacturer. Our performance also reflects growing demand for our products across all product lines, driven by our comprehensive and high quality product offering, our low cost manufacturing base, extensive distribution network and our focus on continually developing new products. We remain on schedule to launch 36 new products during 2010, eight of which have already been launched, consisting of two products in our water purification product category and six products in our wastewater treatment product category. We look forward to building upon this momentum as we enhance the diversity of our product portfolio throughout 2010. We are confident that we'll capitalize on the opportunities created by intensified government efforts to monitor wastewater discharge and the growing consumer awareness of water quality concerns in China."

- 13 -

Guo continued, "We are pleased to announce significant progress in several of our growth initiatives. We continue to move forward in our expansion at Langfang and in the coming weeks we are installing a new aerator production line imported from Germany. We also finalized the land use rights for our new manufacturing facilities in Daxing and progress continues there as we focus on significantly enhancing our production capacity for our existing and new market products over the next two years."

Guo then remarked, "We are also excited to announce that we are in the process of negotiating two licensing opportunities. These opportunities would expand our portfolio offerings into the drip irrigation and high-end membrane technology market. Today, we already have more than 100 products in our portfolio and moving forward, we will continue to grow the depth and breadth of our offerings. As demand continues to increase for water treatment equipment, we believe we are well-positioned and uniquely diversified across the sector to capture compelling market opportunities."

\*     \*     \*

Mr. Stephen C. Park, Chief Financial Officer, stated, "As we move forward through 2010, our competitive position remains strong and we are poised for future growth supported by our trusted brand name and extensive distribution network. With this in mind, we expect to generate revenue of approximately RMB280 million in the second quarter of 2010."

32.     On June 18, 2010, the Company filed its Annual Report with the SEC on Form 20-F

for the 2009 fiscal year, which was signed by Defendants Guo and Park. Therein, the Company, in

relevant part, stated:

**Wenhua Guo, our chairman and chief executive officer and 48.6% beneficial owner of our ordinary shares, has substantial influence over our company, and his interests may not be aligned with the interests of our other shareholders.**

Wenhua Guo, our chairman and chief executive officer, beneficially owns 48.6% of our ordinary shares. As a result, he has significant influence over our business, including decisions regarding mergers, consolidations and the sale of all or substantially all of our assets, election of directors and other significant corporate actions. This concentration of ownership may also have the effect of discouraging, delaying or preventing a future change of control, which in turn could prevent our shareholders from recognizing a gain in the event that a favorable offer is extended and may materially and adversely affect the market price of our ADSs.

- 14 -

In addition, on December 1, 2007, we transferred all our Duoyuan-related trademarks to Duoyuan Investments Limited, our majority shareholder, which is wholly owned by Mr. Guo. On September 17, 2008 and May 27, 2009, Duoyuan Investments Limited granted us an exclusive, royalty-free perpetual license to use these trademarks for our business, which license may terminate in certain instances. Mr. Guo's refusal to allow us to use the Duoyuan name on reasonable terms or at all could have the effect of discouraging, delaying or preventing a future change of control, which in turn could prevent our shareholders from recognizing a gain in the event that a favorable offer is extended and may materially and adversely affect the market price of our ADSs.

\* \* \*

**Limitations on our use of the "Duoyuan" name and third-party use of our trademarks and the "Duoyuan" name may dilute their value and materially and adversely affect our reputation, goodwill and brand.**

On December 1, 2007, we transferred all our Duoyuan-related trademarks to Duoyuan Investments Limited, our majority shareholder, which is wholly owned by Mr. Wenhua Guo, our chairman and chief executive officer. On September 17, 2008 and May 27, 2009, Duoyuan Investments Limited granted us an exclusive, royalty-free perpetual license to use these trademarks for our business. Such license would terminate upon certain events, including a change in control. Duoyuan Investments Limited and Duoyuan Printing, Inc. may use these trademarks for other products, which may create confusion regarding our brand. In addition, some of our distributors use the Chinese characters of our name, "Duoyuan", in their company name and we may be unable to prevent such use. The use of "Duoyuan" in their legal names by these distributors may confuse our end-user customers who may associate our name with the distributor and incorrectly believe our distributors are our affiliates. Due to ambiguities in Chinese intellectual property law, the cost of enforcement and our prior lack of enforcement, we may be unable to prevent third parties from using the Duoyuan trademark and our name, Duoyuan.

\* \* \*

**Concurrent positions held by Wenhua Guo, our chairman and chief executive officer, with other businesses could impede his ability to devote sufficient time to our business and could pose conflicts of interest.**

Wenhua Guo serves as chairman of Duoyuan Printing, Inc., a public company. He is also the beneficial owner of 100% of the equity interest in our majority shareholder, Duoyuan Investments Limited, which owns a controlling interest in Duoyuan Printing, Inc. Through its subsidiaries in China, Duoyuan Printing, Inc. is principally

engaged in the manufacture and sale of offset printing equipment to the Chinese market. Mr. Guo devotes most of his business time to our affairs and the remainder of his business time to the affairs of these printing equipment-related companies. Mr. Guo's decision-making responsibilities for these printing equipment-related companies are in the areas of public relations, management of human resources, risk management and strategic planning. As a result, conflicts of interest may arise from time to time. Additionally, even though Mr. Guo is accountable to us and our shareholders as a fiduciary, which requires that he exercise good faith and due care in handling our affairs, his existing responsibilities to other entities may limit the amount of time he can spend on our affairs.

\*      \*      \*

**Other Income**

Other income is primarily comprised of interest income earned on our cash deposits and rental income which we received in 2007 and the first half of 2008 from the lease of our office space located at No. 3 Jinyuan Road to Duoyuan Digital Printing Technology Industries (China) Co. Ltd., an entity controlled by our chairman and chief executive officer, Wenhua Guo.

(Emphasis in original).

33.     On August 18, 2010, the Company issued a press release entitled, "Duoyuan Global

Water Inc. Reports Second Quarter 2010 Financial Results." Therein, the Company, in relevant part,

stated:

Second Quarter 2010 Financial Highlights

-- Revenue increased 37.4% to RMB293.6 million ($43.3 million(1)) from RMB213.7 million in the prior year period.
-- Gross profit increased 34.1% to RMB140.4 million ($20.7 million) from RMB104.7 million in the prior year period.
-- Gross margin was 47.8% compared to 49.0% in the prior year period.
-- Diluted earnings per ADS was $0.45. Each ADS represents two of the Company's ordinary shares.

\*      \*      \*

Mr. Wenhua Guo, the Company's Chairman and Chief Executive Officer, stated, "Our second quarter results demonstrate our sustained growth and presence in China's water treatment industry as well as contributions from our new, higher margin product launches. We will continue to drive growth through new products

- 16 -

developed through both our research and development efforts as well as partnership agreements and opportunities. Moving forward, we are confident in our ability to maintain our growth trajectory through our comprehensive and high quality product offerings, our low cost manufacturing base, our extensive distribution network and our focus on continually developing new products."

\*       \*       \*

Financial Outlook

Mr. Stephen C. Park, Chief Financial Officer, stated, "As we move forward through 2010, our competitive position remains strong and we are poised for future growth supported by our trusted brand name and extensive distribution network. With this in mind, we expect to generate revenue of approximately RMB326 million in the third quarter of 2010."

(Emphasis in original).

34.     The statements contained in ¶¶26-33 were materially false and/or misleading when made because defendants failed to disclose, among others: (1) that, due to the substantial interconnection between Duoyuan Global Water and DYP, the existence of accounting improprieties and ineffective internal controls at DYP could negatively impact Duoyuan Global Water; and (2) that, as a result, the Defendants lacked a reasonable basis for their statements about Duoyuan Global Water, its business, operations, prospects, and growth.

## The Truth Begins To Emerge

35.     On September 13, 2010, DYP issued a press release entitled, "Duoyuan Printing Announces Management Reorganization and Change of Auditor." Therein, DYP, in relevant part, stated:

BEIJING, September 13, 2010 – Duoyuan Printing, Inc. (NYSE: DYP) ("Duoyuan Printing" or the "Company"), a leading offset printing equipment supplier in China, today announced several management changes as well as the dismissal of Deloitte Touche Tohmatsu CPA Ltd.("Deloitte") as its independent registered public accounting firm. The Company is currently in discussion with an auditing firm to replace Deloitte.

- 17 -

Effective immediately, Mr. Xiqing Diao has been appointed Duoyuan Printing's CEO. Previously the Company's COO, Mr. Diao has been with the Company since 2005 and served as interim CEO in 2009. Ms. Baiyun Sun has been appointed CFO. Ms. Sun has been with Duoyuan Printing since 1994 previously serving as the Company's controller. Mr. Wenzhong Liu, previously vice president of sales and marketing, has been appointed COO and Mr. Lianjun Cai, a Company director, has been appointed chairman of the audit committee.

Immediately subsequent to the Company's termination of Deloitte, Mr. William Suh resigned as Duoyuan Printing's CFO and Mr. Christopher Holbert resigned as Duoyuan Printing's CEO. Mr Holbert will remain with the Company as vice president of international markets. Mr. James Zhang resigned as director and chairman of the audit committee and Ms. Naoko Hatakeyama and the Honorable Paula J. Dobriansky also subsequently resigned as directors. Mr. Xiqing Diao has also resigned as a director in order to maintain the required proportion of independent directors on Duoyuan Printing's board.

Duoyuan Printing's Chairman Mr. Wenhua Guo stated, "The audit committee's decision to change auditing firms was based on its desire to resolve open issues and file our 10-K on a timely basis. We will work closely with our new auditors to address the open issues aired by Deloitte. We believe that our several internal reassignments are the best way to move the company forward and complete our annual audit. We believe we now have the right people in important roles to execute the company's business strategy and to meet our current reporting obligations."

36.    On September 13, 2010, DYP filed a Current Report on Form 8-K with the SEC.

Therein, DYP, in relevant part, stated:

**Item 4.01 Changes in Registrant's Certifying Accountant.**

Effective as of September 6, 2010, Deloitte Touche Tohmatsu CPA Ltd. ("Deloitte") was dismissed by the Audit Committee (the "Audit Committee") of Duoyuan Printing, Inc. (the "Company") as the independent registered public accounting firm of the Company.

During the period of Deloitte's engagement from March 2, 2010 to September 6, 2010, no audit performed by Deloitte had been completed and, therefore, no audit reports had been issued that (i) contained an adverse opinion or disclaimers of opinion or (ii) were qualified or modified as to uncertainty, audit scope or accounting principles.

- 18 -

During the period from March 2, 2010 to September 6, 2010, there were no disagreements between the Company and Deloitte on matters of accounting principles or practices, financial statement disclosure or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of Deloitte, would have caused Deloitte to make reference to the subject matter of the disagreement in their reports on the financial statements, *except for the following:*

* *Deloitte requested that the Company provide permission to access original bank statements to complete its audit procedures to verify the identity of certain individuals and entities associated with third party distributors and vendors. As of the time of Deloitte's dismissal, the Company had not granted such permission because it believed the method and scope of the request was overly broad for the purpose of verifying the identity of such individuals and entities. Deloitte informed the Chairman of the Audit Committee of such disagreement and the matter was not resolved by the time of Deloitte's dismissal.*

During the period from March 2, 2010 to September 6, 2010, there were no "reportable events" as that term is defined in

Item 304(a)(1)(v) of Regulation S-K, except the following:

* *In the course of its audit procedures, Deloitte identified supporting documentation for approximately RMB24 million of expenses related to advertising and tradeshow costs, the authenticity of which could not be verified to Deloitte's satisfaction. Deloitte suggested to the Audit Committee that it investigate these expenses. The Audit Committee has undertaken an independent investigation. At the time of its dismissal, Deloitte had not received subsequent information from the Audit Committee on the progress or outcome of the investigation.*

* *In the course of its audit procedures, Deloitte received information regarding certain distributors and vendors that appeared inconsistent with certain information that the Company had provided. Deloitte informed the Company and the Audit Committee of the inconsistencies. The Company worked to address these inconsistencies, but at the time of its dismissal, Deloitte had not received complete explanations from the Company to address all of its concerns.*

* *Deloitte advised the Audit Committee that it was informed by the Chief Executive Officer and Chief Financial Officer of the*

*Company that they felt they did not have access to the information on the open matters referred to above nor were they in a position to assist the investigation. Deloitte expressed its concerns as to the impact of this on its ability to rely on the future representations from those members of management that it would otherwise seek to obtain as part of its normal audit procedures.*

The Company has authorized Deloitte to respond fully to the inquiries of the Company's successor accountant concerning the subject matter of each of the disagreement and reportable events referred to above.

The Company provided Deloitte with a copy of the disclosures it is making in this Current Report on Form 8-K (the "Report") prior to the time the Report was filed with the Securities and Exchange Commission (the "SEC"). The Company requested that Deloitte furnish a letter addressed to the SEC stating whether or not it agrees with the statements made herein. The Company will file the letter from Deloitte as an amendment to this Report within two business days of receipt.

**Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers; Compensatory Arrangements of Certain Officers.**

(a) On September 6, 2010, following the decision to dismiss Deloitte as the independent registered public accounting firm of the Company:

- Mr. James Zhang, Chairman of the Audit Committee tendered his resignation from the Board of Directors of the Company (the "Board") effective immediately over the disagreement with the Company and the Board for dismissing Deloitte as the independent registered public accounting firm of the Company. Mr. Zhang had served as the Chairman of the Audit Committee and a member of the Board since September 2009. Mr. Zhang's resignation letter is included as Exhibit 99.2 to this Current Report; and

- The Honorable Paula J. Dobriansky tendered her resignation from the Board effective immediately, which was later followed by a formal letter. The Honorable Paula J. Dobriansky had served as a member of the Board since May 2010. Ms Dobriansky's resignation letter is included as Exhibit 99.3 to this Current Report.

On September 8, 2010:

- Ms. Naoko Hatakeyama tendered her resignation from the Board effective immediately. Ms. Hatakeyama had served as a member of

- 20 -

the Board since May 2010. Ms. Hatakeyama's resignation letter is included as Exhibit 99.4 to this Current Report; and

• Mr. Xiqing Diao tendered his resignation from the Board effective immediately in an effort to maintain a majority of independent directors on the Board to stay in compliance with relevant listing standards. Mr. Diao had served as a member of the Board since November 2005, and will remain with the Company as its new Chief Executive Officer as described in more detail below.

The circumstances representing the disagreement that caused the resignation of the above Directors, if any, are provided in their respective resignation letters, if applicable, which are incorporated herein by reference in their entirety.

The Company provided each of the above Directors (the "Resigning Directors") with a copy of the disclosures it is making in the Report prior to the time the Report was filed with the SEC. The Company provided each of the Resigning Directors with the opportunity to furnish a letter addressed to the Company stating whether or not he or she agrees with the statements made herein. The Company will file the letter from each of Resigning Directors as an amendment to this Report within two business days of receipt.

(b) Following the decision to dismiss Deloitte as the independent registered public accounting firm of the Company:

• On September 6, 2010, Mr. William D. Suh tendered his resignation from the position of Chief Financial Officer of the Company effective immediately. Mr. Suh had served as the Chief Financial Officer of the Company since October 2008; and

• On September 8, 2010, Mr. Christopher Patrick Holbert tendered his resignation from the position of Chief Executive Officer of the Company effective September 8, 2010 18:00 p.m. Beijing Time. Mr. Holbert had served as the Chief Executive Officer of the Company since August 2009.

(c) On September 8, 2010, the Board also made the following changes:

• Mr. Lianjun Cai was elected as Chairman of the Audit Committee effective immediately. In making this election, the Board determined that Mr. Lianjun Cai had sufficient accounting and related financial management expertise to serve as the Chairman of the Audit Committee.

- 21 -

• Mr. Xiqing Diao was appointed as the Chief Executive Officer of the Company effective September 8, 2010 18:00 p.m. Beijing Time. At the same time, Mr. Diao stepped down from the position of the Chief Operating Officer of the Company. Mr. Diao has served as a Director and the Chief Operating Officer of the Company since November 2005. Mr. Diao also served as the interim Chief Executive Officer of the Company from July 9, 2009 to August 26, 2009. He served as vice general manager of Duoyuan Clean Water Technology Industries (China) Co., Ltd. ("Duoyuan Water") from August to November 2005, assistant general manager of Duoyuan Electric (Tianjin) Auto Water Pump Co., Ltd., an automobile parts manufacturer, from January to July 2005, and general manager of Operations of Duoyuan Electric Group from January 2003 to December 2004. From May 2001 to December 2002, Mr. Diao served as general manager of No. 1 Division of Duoyuan Water. He was also certified as an ISO9001:2000 Internal Auditor and an ISO14000 Internal Auditor in 2004. Mr. Diao received a bachelor's degree in mechanics from Tianjin Textile Technology Institute, China.

• Ms. Baiyun Sun was appointed as the Chief Financial Officer of the Company effectively immediately. Ms. Sun served as the Controller of the Company from October 1, 2008 to September 8, 2010. Prior to that, she served as interim Chief Financial Officer of the Company from December 20, 2007 to March 1, 2008 and from May 21, 2008 to October 1, 2008. Prior to that, she served as the Chief Financial Officer of the Company from October 6, 2006 to July 18, 2007, a Director and vice president of the Company between June 2001 and April 2007 and chief accountant of Duoyuan Electric Group from January 1994 to May 2001. Ms. Sun received a bachelor's degree in accounting from Beijing Finance and Commerce Institute, China.

• Mr. Wenzhong Liu was appointed as the Chief Operating Officer of the Company effectively immediately. Mr. Liu has served as vice president of sales and marketing of the Company since November 2005. He served as assistant general manager of sales at Duoyuan Digital Press Technology Industries (China) Co., Ltd. ("Duoyuan China") from July to October 2005, interim general manager of sales at Duoyuan China from November 2004 to June 2005, and sales representative at Duoyuan China from January 2001 to October 2004. Mr. Liu received a bachelor's degree in science from Luoyang Engineering Institute, China.

- 22 -

- Mr. Christopher Patrick Holbert was appointed as Vice President of International Markets effective immediately.

(Emphasis added).

37.     On this news, shares of DGW declined $8.60 per share, or 41.55%, to close on September 13, 2010, at $12.10 per share, on unusually heavy volume.

38.     On September 14, 2010, Duoyuan Global Water announced that its Board of Directors had instructed the Audit Committee of the Board of Directors to initiate an independent third party review of the accounting, internal controls and corporate governance of the Company. Specifically, the Company, in relevant part, stated:

> The Board of Directors voted unanimously to take proactive action following a recent announcement by Duoyuan Printing, Inc. ("Duoyuan Printing"), that may have been perceived to involve the Company [which is an affiliate of Duoyuan Printing], as Wenhua Guo (the Company's Chairman and CEO) is also Duoyuan Printing's Chairman of the Board and its largest shareholder. While there are presently no known accounting or corporate governance issues to be reviewed and the Company consistently has received unqualified audits from Grant Thornton, an international accounting firm, for four successive years, the Company's Board of Directors is of the opinion that the appointment of an independent third party is necessary to ensure the highest level of transparency and accountability.

## UNDISCLOSED ADVERSE FACTS

39.     The market for Duoyuan Global Water's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Duoyuan Global Water's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Duoyuan Global Water's securities relying upon the integrity of the market price of the Company's securities and market information relating to Duoyuan Global Water, and have been damaged thereby.

- 23 -

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Duoyuan Global Water's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Duoyuan Global Water's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Duoyuan Global Water's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Duoyuan Global Water's securities at artificially inflated prices and were damaged thereby. The price of the Company's

securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Duoyuan Global Water, his/her control over, and/or receipt and/or modification of Duoyuan Global Water's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Duoyuan Global Water, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for Duoyuan Global Water's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Duoyuan Global Water's securities traded at artificially inflated prices during the Class Period. On November 19, 2009, the closing price of the Company's common stock reached a Class Period high of $41.73 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of

- 25 -

Duoyuan Global Water's securities and market information relating to Duoyuan Global Water, and have been damaged thereby.

46.    During the Class Period, the artificial inflation of Duoyuan Global Water's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Duoyuan Global Water's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Duoyuan Global Water and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.    At all relevant times, the market for Duoyuan Global Water's securities was an efficient market for the following reasons, among others:

(a)    Duoyuan Global Water stock met the requirements for listing, and was listed and  actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Duoyuan Global Water filed periodic public reports with the  SEC and the NYSE;

(c)    Duoyuan Global Water regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Duoyuan Global Water was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to

the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

48. As a result of the foregoing, the market for Duoyuan Global Water's securities promptly digested current information regarding Duoyuan Global Water from all publicly available sources and reflected such information in Duoyuan Global Water's stock price. Under these circumstances, all purchasers of Duoyuan Global Water's securities during the Class Period suffered similar injury through their purchase of Duoyuan Global Water's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Duoyuan Global Water who knew that the statement was false when made.

- 27 -

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Duoyuan Global Water's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Duoyuan Global Water's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Duoyuan Global Water's financial well-being and prospects, as specified herein.

- 28 -

54.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Duoyuan Global Water's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Duoyuan Global Water and its business, operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and/ engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

55.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

- 29 -

56.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Duoyuan Global Water's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Duoyuan Global Water's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Duoyuan Global Water's securities during the Class Period at artificially high prices and were damaged thereby.

58.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

members of the Class and the marketplace known the truth regarding the problems that Duoyuan Global Water was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Duoyuan Global Water securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of Duoyuan Global Water within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with

- 31 -

or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.     As set forth above, Duoyuan Global Water and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

- 32 -

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 20, 2010

**POMERANTZ HAUDEK GROSSMAN**
**& GROSS LLP**

By: _____

Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone:   (212) 661-1100
Facsimile:   (212) 661-8665

**POMERANTZ HAUDEK GROSSMAN**
**& GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone:   (312) 377-1181
Facsimile:   (312) 377-1184

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160
E-mail:      info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112

- 33 -

Bensalem, PA 19020
Telephone:      (215) 638-4847
Facsimile:      (215) 638-4867
E-mail:         legul2010@aol.com

***Attorneys for Plaintiff Mingli Li***

**SWORN CERTIFICATION OF PLAINTIFF**

Duoyuan Global Water, Inc., **SECURITIES LITIGATION**

I, Mingli Li, certify that:

1.   I have reviewed the complaint and authorized its filing.

2.   I did not purchase Duoyuan Global Water, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.   I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.   My transactions in Duoyuan Global Water, Inc. during the class period set forth in the Complaint are as follows:

   I bought ___52___ shares on _8_/_3_/_09_ at $_30._ per share.
   I bought ___52___ shares on _12_/_21_/_09_ at $_34.6_ per share.
   I bought ___5___ shares on _1_/_28_/_10_ at $_33._ per share.
   I bought ___200___ shares on _1_/_22_/_10_ at $_33._ per share.
   I bought ___50___ shares on _1_/_22_/_10_ at $_29.8_ per share.

   I sold _____ shares on ___/___/___ at $_____ per share.
   I sold _____ shares on ___/___/___ at $_____ per share.
   I sold _____ shares on ___/___/___ at $_____ per share.
   I sold _____ shares on ___/___/___ at $_____ per share.
   I sold _____ shares on ___/___/___ at $_____ per share.

   (List Additional Transactions on a Separate Page if Necessary)

5.   I have not served as a representative party on behalf of a class under this title during the last three years except as stated.

6.   I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ____   Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _9/17/2010_                    _Mingli Li_
                                        (Please Sign Your Name Above)